HENDERSON *v.* LINSTON *et al.*

BALDON *et al. v.* HENDERSON.

(*Nashville,* December Term, 1947.)

Opinion filed February 28, 1948.

Joseph Martin, Tom Ed Murray, and Louis Farrell, Jr., all of Nashville, for complainant.

Noah W. Cooper, of Nashville, for Ella Henderson Thompson.

Alfred T. Adams, of Nashville for American Nat. Bank.

Robt. L. Alexander, Jr., of Nashville, for Lundon B. and John Thomas Baldon.

J. P. Buchanan, of Nashville, guardian *ad litem*.

Mr. Chief Justice Neil delivered the opinion of the Court.

The only question presented on this appeal involves the right of a legitimate niece and nephew and a legitimate great niece to share in the personal estate of their uncle and great uncle, one Lun Baldon, who was illegitimate and who died intestate without wife, mother, father, children or brothers and sisters surviving him.

Lun Baldon was born of an unmarried slave mother, Julia Baldon. His mother later married and had a legitimate child, Annie, who became the wife of William Henderson. Three children were born of this union, to wit, Lun, Nellie and Robert Henderson. The last named child married and became the father of one child, Ella Henderson. Both he and his wife died some years ago leaving the only child, Ella, surviving. It thus appears that the first two claimants, Lun and Nellie, are the legitimate nephew and niece, respectively, of Lun Baldon, while Ella Henderson is the only surviving great niece of the said Baldon. We will refer to these claimants by their christian names, Lun, Nellie and Ella, and to Lun Baldon as the intestate.

The intestate was quite a thrifty man and left a valuable estate of both realty and personalty. The above named niece and nephew and great niece were adjudged to be the lawful heirs of the intestate and each acquired by descent a one-third interest in all of his real property. The nephew and niece, Lun and Nellie, claim all of the personalty to the exclusion of Ella. The Chancellor held that they should share equally in the personalty, one-third each.

The nephew and niece, Lun and Nellie, appealed to the Court of Appeals, which reversed the Chancellor, holding that only Lun and Nellie were entitled to the personalty which consisted of stocks and bonds and

money in the bank. We granted *certiorari* and the case has been argued by counsel.

The right of an illegitimate to inherit is not involved in the instant case. The Chancellor was of opinion that the statute which governs the distribution of the personal estate of legitimate persons, Code, sections 8389 and 8390, had no application to the instant case and that he should look alone to statutes which govern the distribution of personal estates of illegitimates, to wit, Code, sections 8391 and 8392. These latter sections of the Code are in apparent conflict with sections 8389 and 8390 in that they embody an entirely different plan of distribution of the personal estates. The learned Court of Appeals undertook to harmonize them along with Section 8393, applying the rule of construction *"in para marteria"* in determining the intention of the Legislature. By this process the Court held that Code, section 8390, which applies to estates of legitimates, was likewise applicable to the distribution of the personal estate of illegitimates. The Code sections above referred to; and which provide for the distribution of personalty of legitimates, are as follows:

Section 8389: "The personal estate as to which any person dies intestate, after the payment of the debts and charges against the estate, shall be distributed as follows:

. . . . . . .

"(5) If no father or mother, to brothers and sisters, or the children of such brothers and sisters representing them, equally."

Section 8390: *"There is no representation among collaterals, after brothers' and sisters' children."* (Italics ours.)

The Code sections governing the distribution of personalty of illegitimates are as follows:

Section 8391: ''When an illegitimate dies intestate without child or children, husband or wife, his personal property shall go to his mother; or, if there be no mother living, then equally to his brothers and sisters by his mother, *or descendants of such brothers and sisters.*'' (Italics ours.)

Section 8392: ''The personal property of illegitimate persons dying intestate, leaving no relatives otherwise entitled to same, shall go to such persons as would, had the intestate been legitimate, have been his distributees on his mother's side, in such proportions and under the same rules as are provided by the laws of distribution of personal property among legitimates who have no kin on the father's side.''

■ This last Code section has no application to the instant case because the intestate Lun Baldon died ''leaving relatives.'' In other words, we are not dealing with the distribution of an estate of an illegitimate dying intestate ''leaving no relatives otherwise entitled to same,'' etc.

Neither do we think Code, section 8393, has any application to the instant case. This section makes special provision for both legitimate and illegitimate children to share equally in the personal estate of their mother, and to inherit from each other ''as by the general rules of distribution.'' The claimants in the instant case are all legitimate and claim to be the distributees of the estate of their illegitimate uncle and great uncle as provided in Code, section 8391 above quoted. Since they are claiming nothing from their mother's estate, there is no occasion for considering Section 8393 in connection with

other statutes relating to the right of collateral kin to claim as distributees of the estate of an illegitimate relative. Furthermore, it is beside the point to construe *in pari materia* Code sections providing for the distribution of estates of illegitimates with Code sections which relate solely to the distribution of estates of legitimate persons.

Our statutes providing for the distribution of the personal estates of legitimate persons, Code, section 8389 *et seq.*, were enacted by the Legislature many years prior to the enactment of statutes providing for the distribution of personalty if illegitimates. These separate statutes, enacted at different periods, and which distribute personal estates of separate and distinct classes of persons in a strikingly different manner, have no relation to each other and hence should not be construed *in pari materia.* They cannot in any sense reflect the intention of the Legislature otherwise than as expressed in the statutes themselves.

We think the learned Court of Appeals committed error in considering the several Code sections (8391, 8392 and 8393) *in pari materia.* By adopting this rule of construction the Court held that since brothers' and sisters' children of the legitimate dying intestate were cut off as distributees of the intestate under Code, section 8390, the same should apply where they claim the right as distributees of the estate of an illegitimate under Code, section 8391. The Court, in construing Code, sections 8390 and 8391 *in pari materia,* says:

"We think the phrase 'or descendants of such brothers and sisters' in Code, Section 8391 should be construed to read: 'or children of such brothers and sisters'; and that the limitation of representation to 'brothers' and sisters' children' in Code, Section 8390 should apply."

The Court in thus construing the statute cuts off the great niece, Ella Henderson, entirely from any share in the personal estate of her great uncle. The reason for this interpretation of "descendants" is found in the insistence that if the word is given its technical meaning "the great niece of Lun Baldon would be given greater rights of inheritance from her illegitimate great uncle than she would have from her legitimate great uncle. This would be contrary to the general purpose of the Legislature."

It may be conceded that there are some apparent injustices in the law of inheritance and distribution. One notable instance is pointed out by appellant that whereas the widow of a legitimate takes only a homestead and dower right in her deceased husband's lands, a year's support and a share of his personalty where there are children, the widow of an illegitimate takes all of his lands and all of his personalty if there are no children.

With great deference to the Court of Appeals and counsel for appellees, we cannot undertake to iron out the apparent conflicts and alleged injustices in the law. These discriminations in favor of those who are given the right to share in the estates of illegitimates are fixed by express statutes. The courts have no power to modify them so as to conform to laws applying to estates of legitimate persons.

In Sizer's Prichard Law of Wills and Executors, section 799, it is said:

"The ordinary statute of distribution does not apply to bastards, unless they are embraced by its terms or by necessary implication, but the distribution of the estates of such persons, and of estates of mothers who

leave legitimate and illegitimate children, is provided for by other statutes."

Counsel for both appellant and appellees have cited a number of cases wherein this Court has construed the several sections of the Code relating to the distribution of personal estates of illegitimates, but in none of them has the Court gone so far as to construe "descendants of brothers and sisters" to mean "children of such brothers and sisters" and thereby cut off a descendant from his rightful share of an estate on the ground of remoteness of kinship.

It would unduly prolong this opinion for us to discuss all the cases in which these Code sections have been construed. In one of our earlier cases, *Webb* v. *Webb*, 40 Tenn. 68, 69, it was said: "The general laws of descent, it must be remembered, do not in general apply to illegitimates unless embraced in terms or by necessary implication." In this case Webb was illegitimate and died intestate. He left a widow, some collateral kin, but no children surviving. It was argued that his estate goes either to the mother or to his legitimate brothers. Held that said estate "goes to his widow."

In *Scoggins* v. *Barnes*, 67 Tenn. 560, the husband of an illegitimate wife succeeded to all her property to the exclusion of her sister.

In *McCline* v. *Ridley*, 134 Tenn. 164, 183 S. W. 736, the Court held that grandchildren of an illegitimate were entitled to inherit from him and, being excluded from his will, had the right to contest it. It is insisted that the case is not applicable here because the right to inherit land alone was involved and not the right as next of kin to share in his personal estate. We think it is directly in point. The will in question made disposition of both

land and personal property. Moreover, our statutes, Code, sections 8389 and 8391, providing for the inheritance of the land of an illegitimate and the disposition of his personalty are identical. So that, the opinion of the Court in holding them to be "heirs," is authority for sustaining appellant's contention that she is a lawful distributee of the estate of Lun Baldon.

The decree of the Court of Appeals is reversed and that of the Chancellor is affirmed.

The cause is remanded for orders distributing the personal estate in compliance with this opinion, as well as such other orders as may be necessary to a final decree. The cost of appeal is equally divided, each paying one-third.

All concur.